UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID MCCLUNG,

                Plaintiff,                3:14-cv-1365
                                                        (GLS/DEP)

       v.

CREDIT ACCEPTANCE
CORPORATION et al.,

                Defendants.
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Law Office of Anthony J. Pietrafesa    ANTHONY J. PIETRAFESA, ESQ.
118 Wendell Terrace
Syracuse, NY 13203

**FOR THE DEFENDANTS:**
McLaughlin, Stern Law Firm           MATTHEW D. SOBOLEWSKI,
260 Madison Avenue                    ESQ.
New York, NY 10016

**Gary L. Sharpe**
**District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff David McClung commenced the instant action against defendants Credit Acceptance Corporation and several John Does, alleging a violation of New York General Business Law § 349, breach of

the implied covenant of good faith and fair dealing, common law tort, and abuse of process. (Compl., Dkt. No. 1, Attach. 2 at 2-13.) Pending are Credit Acceptance's motion to compel arbitration and to dismiss, or, in the alternative, to stay this action, (Dkt. No. 8), and McClung's cross motion to remand pursuant to 28 U.S.C. § 1447, (Dkt. No. 9). For the reasons that follow, McClung's cross motion is granted, and, correspondingly, Credit Acceptance's motion is denied.

## II. **Background**[1]

In June 2011, McClung purchased a new car form Kingston Nissan, with a $2,800 down payment. (Compl. ¶ 6.) McClung financed the remainder of the purchase with a $14,000 car loan, payable in fifty-seven monthly payments. (*Id.*) The retail installment contract for the car between McClung and Kingston Nissan provided that, if the car was totaled in an accident, McClung would not be responsible for any "GAP" amount, or the difference between McClung's car insurance proceeds and the amount still due on the car loan. (*Id.* ¶ 8.) Instead, McClung paid for "GAP waiver" insurance coverage in the lender's name, providing coverage of the GAP

---

[1] Unless otherwise noted, the facts are drawn from McClung's complaint and presented in the light most favorable to him.

2

amount in the event of such an accident. (*Id.* ¶ 10.) The contract also provided that Kingston Nissan's "right, title and interest" in the contract and to the vehicle were assigned to Credit Acceptance. (*Id.* ¶ 12; Dkt. No. 1, Attach. 2 at 16-17.)

In March 2013, the car was declared a total loss after an accident. (Compl. ¶ 15.) McClung's car insurance company paid Credit Acceptance the amount covered under his collision policy. (*Id.* ¶ 17.) Subsequently, Credit Acceptance commenced an action in New York State Supreme Court in Delaware County, seeking $2,222.16—the difference between what was owing on the car loan at the time of the accident and the amount McClung's insurance company paid Credit Acceptance after the car was totaled. (*Id.* ¶¶ 19, 22.) Credit Acceptance also reported McClung's alleged unpaid debt to several credit reporting agencies, harming his credit score. (*Id.* ¶¶ 28-29.) According to McClung, Credit Acceptance "receives money from the GAP insurance provider for policies on which [it] does[ not] make a claim." (*Id.* ¶ 14.) McClung alleges that Credit Acceptance deliberately sued him instead of claiming against the GAP waiver policy for one of three reasons: (1) in order to protect its pecuniary interest in the GAP waiver policy; (2) because Credit Acceptance failed to purchase the

3

GAP waiver insurance that McClung paid for; or (3) because Credit Acceptance purchased a GAP waiver policy that "was illegal under the law" because it did not cover the GAP amount. (*Id.* ¶¶ 23-24.) After McClung hired an attorney who informed Credit Acceptance's counsel of the GAP waiver policy, Credit Acceptance withdrew its action against McClung. (*Id.* ¶¶ 26-27.)

McClung commenced this action in New York State Supreme Court in Delaware County in June 2014. (*See generally* Compl.) Defendants subsequently removed the action to this court, on the basis of federal question and supplemental jurisdiction. (Dkt. No. 1 ¶¶ 8-11.) Specifically, defendants assert that, "in addition to certain state law claims, [McClung] alleges a claim against Credit Acceptance under the federal Fair Credit Reporting Act" (FCRA). (*Id.* ¶ 8.) Further, defendants contend that the "state law claims alleged by [McClung] in the [c]omplaint are . . . so related to the FCRA claim 'that they form part of the same case or controversy under Article III of the United States Constitution.'" (*Id.* ¶ 11 (quoting 28 U.S.C. § 1367).) McClung has since moved to remand the action to the state court where it was commenced. (Dkt. No. 9.)

### III. Standard of Review

With respect to cases removed to federal court from state court, 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) (citation omitted). Accordingly, "[o]n a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." *Wilds v. UPS, Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (internal quotation marks and citations omitted). "Unless that burden is met, the case must be remanded back to state court." *Id.* (internal quotation marks and citation omitted).

### IV. Discussion

In support of his motion to remand, McClung contends that this action was improperly removed by defendants because there is no diversity of citizenship between the parties and no question of federal law involved. (Dkt. No. 9, Attach. 1 at 2-3.) According to McClung, his complaint contains four "state law claims [that] do not require a determination of federal law to support relief." (*Id.* at 3.) In support of

5

removal, and in opposition to McClung's motion to remand, Credit Acceptance argues that the court has jurisdiction under 28 U.S.C. § 1331, because McClung's complaint "refers to conduct of Credit Acceptance which allegedly violated the FCRA and . . . specifically requests a declaratory judgment that Credit Acceptance violated the FCRA." (Dkt. No. 10 at 3-6.)[2] Further, Credit Acceptance argues that the court has subject matter jurisdiction here because McClung's claims allege inaccurate credit reporting, and, regardless of his attempts to label such claims as state law causes of action, "the Second Circuit has clearly held that all state common law and state statutory claims related to 'credit reporting' are preempted by the FCRA." (Dkt. No. 10 at 5.) For the reasons that follow, McClung's motion for remand is granted.

Under the removal statute, defendants may remove an action from state court if it originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). Where removal is based upon federal question jurisdiction, removal is appropriate only where the "well pleaded complaint

---

[2] Notably, although it asserts that there is diversity of citizenship among the parties, Credit Acceptance "does not argue that [the court] has diversity jurisdiction under 28 U.S.C. § 1332 . . . because the 'amount in controversy' requirement cannot be satisfied." (Dkt. No. 10 at 6 n.2.) Thus, the court will only consider whether federal question jurisdiction exists.

6

rule" is satisfied. *See Romano v. Kazacos*, 609 F.3d 512, 518-20 (2d Cir. 2010); *Laselva v. Schmidt*, No. 8:08-CV-112, 2009 WL 1312559, at *2 (N.D.N.Y. May 7, 2009). "This rule holds that '[f]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Laselva,* 2009 WL 1312559, at *2 (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)). The standard is fulfilled where federal law creates the cause of action, or the plaintiff's right to relief necessarily depends on resolution of a substantial, disputed question of federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8-9, 13 (1983); *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005). Under the well pleaded complaint rule, then, "'the party who brings a suit is master to decide what law he will rely upon,'" and a plaintiff may avoid federal jurisdiction by pleading only state claims even where a federal claim is also available. *Pan Am. Petroleum Corp. v. Superior Ct. of Del. in & for New Castle Cty.*, 366 U.S. 656, 662-63 (1961) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)); *see Marcus v. AT&T Corp.,* 138 F.3d 46, 52 (2d Cir. 1998).

Here, the complaint explicitly asserts a violation of New York General

Business Law § 349, breach of the implied covenant of good faith and fair dealing, common law tort, and abuse of process. (*See generally* Compl.) Credit Acceptance points out that, in his request for relief, McClung seeks, among other remedies, a declaration that the actions of defendants violated "the federal and state Fair Credit Reporting Acts." (*Id.* at 11; Dkt. No. 10 at 4.) However, the fact that some of the relief sought in the complaint may not be available under the state law claims asserted therein is not determinative of federal question jurisdiction. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343 n.3 (9th Cir. 1996) (finding that a plaintiff did not plead a federal claim in his complaint, where the complaint asserted only state law causes of action, but, in its prayer for relief, sought attorneys' fees and pre-judgment interest under both federal and state law). Moreover, "the mere fact that the complaint mentions the FCRA does not, in of itself, convert the complaint into a removable action." *Harkness v. Wells Fargo Home Mortg., Inc.*, No. 1:11-CV-505, 2011 WL 2634022, at *2 (W.D. Mich. July 5, 2011). Instead, in determining whether federal question jurisdiction exists, "[i]t is the nature of the cause[s] of action that is controlling." *Rains*, 80 F.3d at 343 n.3; *see, e.g.*, *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 915, 917-18 (5th Cir. 2001) (concluding that a

8

complaint did not state a claim created by federal law, despite its allegation that the defendant "engaged in conduct in violation of the Federal Trade Commission rules, regulations, and statutes," because, in context, the "mention of federal law merely served to describe types of conduct that violated the [Texas Deceptive Trade Practices Act], not to allege a separate cause of action under the FCRA); *Barash v. Ford Motor Credit Corp.*, No. 06-CV-6497, 2007 WL 1791656, at *4 (E.D.N.Y. June 20, 2007) (holding that, where the "Cause of Action" section of a plaintiff's complaint made no reference to federal law and stated that he sought damages on the basis of New York State law, the mere mention of federal claims or cases in the "Applicable Precedents" section of the complaint did not convert the complaint into a removable action).

In this case, the actual causes of action stated in the complaint all sound in state law. (Compl. ¶¶ 31-44.) McClung's four claims do not incorporate an element of federal law nor turn on the resolution of a federal question. (*Id.*) Further, the fleeting mention of the FCRA is untethered from facts that could support a private right of action under the FCRA against Credit Acceptance. *See Fashakin v. Nextel Commc'ns*, No. 05CV3080, 2006 WL 1875341, at *4 (E.D.N.Y. 2006) (explaining that,

9

under the FCRA, a consumer has no private right of action against a furnisher of information to credit reporting agencies who provides inaccurate information).³ Accordingly, the court finds that, on its face, McClung's complaint does not assert a federal claim.

Credit Acceptance nonetheless asserts that jurisdiction is proper because McClung's claims are preempted by the FCRA. (Dkt. No. 10 at 5.) Under the claim for a violation of New York General Business Law § 349, which declares unlawful deceptive business practices or acts, the complaint alleges that "placing a negative item on [his] credit report when [Credit Acceptance] knew or should have known [McClung] owed it nothing" was one of numerous acts Credit Acceptance committed that were "false and/or deceptive in a material way" and part of a "pattern and practice of deception in its business pursuit of colleting car loans from [McClung] and hundreds of others." (Compl. ¶¶ 32-33.) Further, under his claim for breach of the implied covenant of good faith and fair dealing,

---

³ The FCRA prohibits a "furnisher" from reporting information if it has actual knowledge, or consciously avoids knowing, that the information is inaccurate, but limits the enforcement of this subsection to government agencies and officials. *See* 15 U.S.C. § 1681s-2(a)(1), (c), (d). Although consumers do have a private right of action against furnishers of information for failing to properly investigate disputed information once notified of the dispute by the credit reporting agency, *see Fashkin*, 2006 WL 1875341 at *4-5, here, McClung's complaint contains no allegation that he notified any reporting agency that he was disputing the accuracy of Credit Acceptance's information.

10

McClung's complaint asserts that placing the negative item on his credit report was one of several of Credit Acceptance's "willful and intentional actions" that deprived McClung of the benefit of the retail installment contract. (*Id.* ¶ 38.) Credit Acceptance argues that because McClung's claims allege inaccurate credit reporting, they are preempted by the FCRA, and, thus, this court has subject matter jurisdiction. (Dkt. No. 10 at 5.)

"[A] plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption." *Sullivan v. Am. Airlines*, 424 F.3d 267, 273 (2d Cir. 2005); *see Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."). However, as a corollary to the well-pleaded complaint rule, the "artful pleading rule" prevents a plaintiff from avoiding removal by declining to plead necessary federal questions. *Romano*, 609 F.3d at 518-19. This rule applies, as relevant here, "when Congress has so completely preempted, or entirely substituted, a federal law cause of action for a state one." *Id.* at 519. In that case, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim,

11

and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citing *Franchise Tax Bd.*, 463 U.S. at 24); *see Sullivan*, 424 F.3d at 272 ("Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted."). Nevertheless, complete preemption "applies only in the very narrow range of cases where 'Congress has clearly manifested an intent' to make a specific action within a particular area removable." *Marcus*, 138 F.3d at 54 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)). "The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption: § 301 of the Labor-Management Relations Act . . . ; § 502(a) of the Employee Retirement Income Security Act . . . ; and §§ 85 and 86 of the National Bank Act." *Sullivan*, 424 F.3d at 272 (citations omitted).

With respect to the FCRA, courts have generally held that it does not provide a basis for removal of state law claims pursuant to the complete preemption doctrine. *See Holmes v. Experian Info. Solutions*, *Inc.*, No. 09

Civ. 874, 2011 WL 4542900, at *3 (S.D.N.Y. Sep. 30, 2011) (collecting cases); *Barash*, 2007 WL 1791656, at *4 n.10; *see also Hamed v. Chase Home Finance, LLC*, No. 13-5833, 2013 WL 5674185, at *2 (E.D. La. Oct. 17, 2013) ("Complete preemption requires clear legislative intent that the federal remedy be exclusive, which is lacking with respect to the FCRA."); *Watkins v. Trans Union, L.L.C.*, 118 F. Supp. 2d 1217 (N.D. Ala. 2000) ("By their own terms, the admittedly significant, but discrete preemptions established in the 1996 FCRA amendments evidence no intent on the part of Congress to grant defendants . . . the extraordinary ability to recharacterize state law claims as a federal cause of action."); *Sherron v. Private Issue by Discover, a Div. of Novus Servs., Inc.*, 977 F. Supp. 804, 808 (N.D. Miss. 1997) ("There is nothing in the legislative history or the FCRA itself to establish that Congress intended [for] state law causes of action . . . to be removable. Indeed, the plain language of the statute empowers plaintiffs to bring FCRA claims in state court, thereby extending concurrent jurisdiction to the state courts."); *but see Williams v. Met. Life Ins. Co.*, No. 94 Civ. 3791, 1994 WL 529880, at *1-2 (S.D.N.Y. Sep. 26, 1994) (allowing for removal of a case because of FCRA preemption, without discussing the complete preemption doctrine). Indeed, Credit

13

Acceptance cites no authority to support the assertion that the FCRA completely preempts state law and, thus, provides for federal subject matter jurisdiction.[4]  (Dkt. No. 10 at 3-6.)  Ultimately, the court agrees with the majority of our sister courts that, although the FCRA may provide Credit Acceptance with a defense of preemption in this case, it does not have the requisite extraordinary preemptive force to support complete preemption.

Because Credit Acceptance has failed to meet its burden of establishing federal jurisdiction, this case is remanded to the New York State Supreme Court in Delaware County.  Given that the court lacks subject matter jurisdiction over this action, Credit Acceptance's motion to compel arbitration and to dismiss is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that McClung's motion for remand (Dkt. No. 9) is **GRANTED**; and it is further

---

[4] Credit Acceptance cites only to *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47-48 (2d Cir. 2011), which addresses the defensive preemption of state law claims by the FCRA, but not the complete preemption necessary to establish subject matter jurisdiction.  (Dkt. No. 10 at 5); *see Caterpillar*, 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption.").

**ORDERED** that Credit Acceptance's motion to compel arbitration and to dismiss (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED** that this action is **REMANDED** to the New York State Supreme Court in Delaware County for all further proceedings; and it is further

**ORDERED** that the Clerk is directed to mail a certified copy of this Memorandum-Decision and Order to the Clerk of Supreme Court of the State of New York in Delaware County and instruct her to file the Memorandum-Decision and Order in *McClung v. Credit Acceptance Corporation et al.*, Index No. 2014-00901; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 24, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge